IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| VERONICA STOVALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 2:12-cv-1036-MEF |
| ) | (WO – Do Not Publish) |
| HANCOCK BANK OF ALABAMA, ) | |
| INC., d/b/a WHITNEY BANK, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of an employment dispute between Plaintiff Veronica Stovall ("Plaintiff" or "Stovall") and her employer, Defendant Hancock Bank ("Defendant" or "Hancock Bank").[1] Now before the Court is Defendant's Partial Motion to Dismiss and Motion for a More Definite Statement (Doc. #7), which was filed on January 16, 2013. For the reasons explained herein, the Court finds that Defendant's motion is due to be GRANTED IN PART and DENIED IN PART.

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

**1.  Facts**

Stovall is an African-American female.  On May 12, 2009, Hancock Bank hired

---

[1] Defendant Hancock Bank was identified as Hancock Bank of Alabama, Inc. in the Complaint. (Docs. #1 & 7.)

[2] This recitation of facts is derived from Stovall's Complaint (Doc. #1). As is required at the motion to dismiss stage, the Court will take as true all factual allegations as pled in the Complaint.

Stovall to work as a Bank Operations Specialist II in the Resolution Department of one of its branch banks in Prattville, Alabama (hereinafter, the "Prattville Branch Bank").

On July 12, 2011, Cynthia Wood ("Wood") reported to Emarilyn Stephens ("Stephens") that Stovall had an "outburst" while on duty. Wood is a Caucasian female employed as a Team Leader, presumably at the Prattville Branch Bank. Stovall does not identify Stephens by race in the Complaint; however, she is identified as Stovall's "Supervisor" in the charge of discrimination attached to the Complaint.[3] (Doc. #1-1.) In response to Wood's report, Stephens and Ann Wyatt ("Wyatt") met with Stovall. Wyatt is a Caucasian female employed as a Human Resources Representative for Hancock Bank. Stovall was issued a disciplinary write-up by Stephens during this meeting.

On August 1, 2011, Stephens accused Stovall of violating company policy regarding cell phone usage, although Stovall was not using her cell phone. Four days later, Stovall observed Heather Mullins ("Mullins"), a Caucasian female Team Leader employed presumably at the Prattville Branch Bank, using her cell phone in front of Stephens, but Mullins was not reprimanded. On November 28, 2011, Candace Gray ("Gray"), a Caucasian female employed at the Prattville Branch Bank, also entered the department with a cell phone

---

[3] Attached as Exhibit 1 to the Complaint are Stovall's March 27, 2012 charge of discrimination with the EEOC and the EEOC's August 29, 2012 right-to-sue letter. (Doc. # 1-1.) Because Stovall references her EEOC charge and right-to-sue letter in her Complaint, and because these documents are central to her discrimination claims and undisputedly authentic, the Court may consider them at this stage in the proceedings without converting Hancock Bank's motion to dismiss into one for summary judgment. *See Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

but was not reprimanded.

On October 14, 2011, Debbie Elwell ("Elwell"), a Caucasian female employed as a Bank Operation Specialist II at the Prattville Branch Bank, had a confrontation with Wood and an "'outburst' on the floor." (Doc. #1, ¶ 9.) Following this confrontation, Stovall, Elwell, and Deone Cantlow ("Cantlow"), an African American female employed at the Prattville Branch Bank, were called to a meeting[4] with Stephens, Mullins, Wyatt, Wood, and Janet Brandon ("Brandon"), a Caucasian female employed as the Deposit Services Manager at the Prattville Branch Bank. During this meeting, Wyatt asked "who wanted to lose their job?" (Doc. #1, ¶ 9.) After this meeting, Stovall and Cantlow were called back for another meeting[5] and were "counseled about treating team leaders with respect," but Elwell was not disciplined for her actions towards Wood. (Doc. #1, ¶ 9.) Stovall does not identify in the Complaint who counseled her at this meeting, who called the meeting, or who else was present at the meeting besides she and Cantlow.

On November 30, 2011, Stovall was given a disciplinary write-up by Stephens "for failure to follow her orders on November 23, 2011." (Doc. #1, ¶ 11.) Stovall does not specify what orders she was given by Stephens on November 23, 2011; rather, she alleges that she informed Stephens and Wyatt that she was following instructions given to her by Wood and that she would file a complaint pursuant to the procedure set out in Hancock

---

[4] The exact date of this meeting is unspecified in the Complaint. (Doc. #1.)

[5] Again, the exact date of this meeting and the counseling Stovall received during this meeting are not specified in the Complaint. (Doc. #1.)

Bank's employee handbook contesting the treatment she was receiving. Stovall did not receive a copy of this write-up.

On December 5, 2011, Stovall filed a complaint about the actions taken against her through Hancock Bank's third-party provider network. Specifically, Stovall complained about the actions Stephens had taken against her and that Wood did not know her own job. Stovall provides no further specifics about her December 5, 2011 complaint.

On December 13, 2011, Wyatt and James Telford ("Telford"), the Regional Human Resources Manager for Hancock Bank, interviewed employees about Stephens's workplace conduct. Telford is not identified by race in the Complaint. Stovall alleges that Telford and Wyatt did not investigate the "job threat" Wyatt made towards her or Wood's "untrue statement, retaliation, harassment, and discriminatory acts, all that were contained in Plaintiff's complaint." (Doc. #1, ¶ 13.) Again, Stovall provides no specifics as to Wood's "untrue statement, retaliation, harassment, and discriminatory acts," which she alleges were all contained in her December 5, 2011 complaint. Stovall asked Telford if he wanted to discuss her December 5, 2011 complaint, and he responded "no." (Doc. #1, ¶ 13.)

On February 8, 2012, Stovall was given her annual performance evaluation by Wood. Stovall was given a low score and "an inaccurate, untrue, and unfair poor performance review." Stovall asked for an explanation of the review but was not given one. On May 16, 2012, Sherry McNutt ("McNutt") re-evaluated Stovall. McNutt is not identified by race or position in the Complaint (although she is presumably employed by Hancock Bank). McNutt

4

expressed to Stovall that she did not know why she was evaluating Stovall because she (McNutt) was from Long Beach, Mississippi and had just met Stovall.

On July 27, 2012, Stovall applied for the positions of Document Analyst Sr. and Lending Customer Service Specialist at the Prattville Branch Bank. Stovall claims she was qualified for both jobs. On August 17, 2012, Stovall was interviewed by Shannon Curry ("Curry") and Lisa Jones ("Jones"), the supervisor and manager for both jobs, respectively. Neither Curry nor Jones are identified by race in the Complaint. Stovall was told by Jones that she could choose either job she wanted.

On August 8, 2012, Stovall emailed a complaint to Jo Hatley ("Hatley"), Senior Vice President and Manager of Deposit Services, about discriminatory and unethical issues that had been occurring in the Prattville Branch Bank's Resolution Department since 2009. Stovall does not identify Hatley by race in the Complaint. Stovall complained that there are three employees, one white and two African-American, in this department, and that the African-American employees (Stovall and Cantlow) were "performing all departmental tasks while Cindy Wood, the white employee performing [sic] little to none of the work because she does not know how to do it even though Ms. Wood had been trained three times or more and her training session lasting [sic] for weeks while Plaintiff had two hours of training." (Doc. #1, ¶ 18.) Stovall further complained that she and Cantlow would "work throughout the day" while Wood would "sit at her desk for hours with nothing to do and management knew this was happening." (Doc. #1, ¶ 18.)

5

On August 10, 2012, employees in the Prattville Branch Bank's Resolution Department "were removed from all job functions with [sic] consist of processing commercial new and commercial change of title accounts." (Doc. #1, ¶ 19.) However, the only removed employee specifically identified in the Complaint was Stovall.

On August 15, 2012, Hatley, Telford, and Jonathan Rodriquez ("Rodriquez") met with Stovall to discuss her August 8, 2012 complaint. Stovall does not specify Rodriquez's race or job title in the Complaint. Nor does she allege that he is employed by Hancock Bank. During this meeting, Telford asked Stovall who was discriminating against her, and she told them "it is discriminating if she [Stovall] is getting all the work and Cindy is doing retail only." (Doc. #1, ¶ 20.) Stovall also complained that "it is unfair that she [Stovall] is working the entire day during [sic] all the functions of the department and Ms. Wood sit [sic] at her desk with nothing to do." (Doc. #1, ¶ 20.) Stovall complained that Wood has less experience but makes the most money, although Stovall does not identify Wood's experience or provide any specific facts to support this claim. Finally, Stovall complained that Wood calls McNutt after hours and this is a "conflict of interest." (Doc. #1, ¶ 20.)

On September 12, 2012, Stovall was notified via email that she was not selected for the Lending Customer Service Specialist position. Stovall also learned that Hancock Bank determined she was not qualified for the Documentation Analyst Sr. position. Stovall claims that other, less qualified employees and applicants outside of Hancock Bank were offered these positions, although Stovall does not provide any specific facts to support this claim,

6

such as the names, race, or gender of these individuals. All Stovall alleges is that she has loan experience and a bachelor's degree "which none of these women had." (Doc. #1, ¶ 22.) According to Stovall, her negative performance review and an EEOC claim she filed in February 2012 against Hancock Bank prevented her from advancing with the company. Notably, this is the only mention of a February 2012 EEOC complaint by Stovall in her Complaint.

On September 25, 2012, Stovall resumed her work in the Prattville Branch Bank's Resolution Department. The following day, Stovall told her manager that she needed refresher training because it had been over a month since she worked with commercial change of title accounts and the procedures had changed. Thereafter, Stovall claims that her manager started "harassing her" with emails asking Stovall to reply via email even though her manager's office was next to Stovall's desk. Stovall claims that her manager "never once harassed" Wood by sending her emails and "asking her for questions for a training manual." (Doc. #1, ¶ 25.)

Stovall claims that, after she filed one of her complaints, Stephens stared at her "constantly" and "has subjected her to ridicule in front of her co-workers." (Doc. #1, ¶ 26.) Yet Stovall does not identify the specific complaint that precipitated these actions by Stephens, whether it be her December 5, 2011 complaint to the third-party provider, her February 2012 EEOC complaint, or her August 8, 2012 complaint to Hatley. Nor does Stovall provide any specific facts as to the "ridicule" Stephens subjected her to in front of

7

her co-workers.

## 2.     Procedural History

Stovall filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 27, 2012.[6] Stovall notes in her charge that the dates of discrimination were July 12, 2011, through October 14, 2011, and does not indicate that the discrimination was part of a "continuing action." Stovall claims that she was discriminated and retaliated against because of her race based on her July 12, 2011 counseling, the October 14, 2011 "job threat," and Hancock Bank's failure to discipline Elwell for having an outburst on the floor on October 14, 2011, that was similar to the outburst Stovall had on July 12, 2011, and was disciplined for.  Stovall's charge does not include any allegations that she was accused of violating the company's cell phone policy in August 2011 while white employees were not; that she was disciplined in November 2011 for not following instructions; that she made complaints on December 5, 2011 to the company's third-party provider network and on August 8, 2012 to Hatley; that she filed a previous complaint with the EEOC in February 2012; that she received a negative performance evaluation in February 2012; or that less qualified, white individuals received the Lending Customer Service Specialist and Documentation Analyst Sr. Positions over her.  Nor does Stovall's charge contain any

---

[6] While Stovall alleges in her Complaint that her EEOC charge was filed on March 23, 2012, the date Stovall signed the charge, EEOC regulations provide that charges are deemed "filed with the Commission upon receipt[]" (*i.e.*, not when signed). 29 C.F.R. § 1601.13(a). Thus, the receipt date indicated on the official stamp is the date that Stovall's EEOC charge was filed–March 27, 2011.

8

allegations regarding conduct that occurred after the charge was filed.

On August 29, 2012, Stovall received a right-to-sue letter from the EEOC. Stovall filed this lawsuit on November 27, 2012, asserting various claims against Hancock Bank under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and state law. (Doc. #1.) Stovall's claims are summarized as follows: (1) a claim for race discrimination in violation of Title VII, § 1981, and § 1983 (Count IV); (2) a claim for deprivation of Stovall's equal protection rights under the Fourteenth Amendment to the United States Constitution in violation of § 1983 (Count V); (3) a claim for intentional infliction of emotional distress (Count VI); (4) a claim for respondeat superior based on Stephens's infliction of emotional distress (Count VII); (5) a claim for deprivation of Stovall's due process rights under the Fourteenth Amendment to the United States Constitution in violation of § 1983 (Count VIII); (6) "exercise of rights protected by law," which is simply a retaliation claim under Title VII (Count IX); and (7) another claim for retaliation (Count X).

In her Complaint, Stovall claims that she has sustained "a feeling of shame, mood swings, sadness, anxiousness, depression, and lack of energy which she did not experience before" those actions. (Doc. #1, ¶ 28.) Stovall also summarily claims that Hancock Bank "did not treat its Caucasian employee [sic] the same as it treated Plaintiff with regards to discipline, and in essence denied Plaintiff her procedural due process rights." (Doc. #1, ¶ 30.)

9

STANDARD OF REVIEW

1.   Rule 12(b)(6)

In considering a Rule 12(b)(6) motion to dismiss, "the court accepts the plaintiff's allegations as true . . . and construes the complaint liberally in the plaintiff's favor." *Id.* at 1297. Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (internal quotations omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully." *Id.* While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation and citations omitted). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Id.*

Courts are also not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Granting a motion to dismiss is appropriate only "when it is demonstrated beyond a doubt the plaintiff can prove no set of

facts in support of [her] claim that would entitle [her] to relief." *Reeves v. DSI Sec. Servs.*, 331 Fed. App'x 659, 661 (11th Cir. 2009).

**2.    Rule 12(e)**

Rule 12(e) of the Federal Rules of Civil Procedure provides that a party may move for a more definite statement if a pleading to which a responsive pleading is required "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  A motion for a more definite statement "must be denied if the complaint attacked thereby, considered as a whole, fairly gives notice of the claim or claims asserted therein so as to permit the filing of a responsive answer." *Herman v. Continental Grain Co.*, 80 F. Supp. 2d 1290, 1297 (M.D. Ala. 2000).  Indeed, a motion for a more definite statement is required only "when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudicing himself." *Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels*, 352 F. Supp. 2d 1218, 1221 (S.D. Ala. 2005).  Such a motion is not a substitute for discovery. *Id.* at 1221-22.

## DISCUSSION

The Complaint in this case is an unfortunate example of the confusion and frustration caused by vague and hasty pleading.  Indeed, it appears that neither Hancock Bank nor the Court can discern with much confidence which specific facts support which of Stovall's various claims.  Nonetheless, the Court will do its best to parse through the Complaint and determine which claims go, which claims stay, and which claims need to be re-pleaded.

1.   **Section 1983 Claims**

In her Complaint, Stovall asserts claims against Hancock Bank for depriving her constitutional rights under the Fourteenth Amendment to the United States Constitution, namely, her equal protection and due process rights, in violation of § 1983.  To prevail on an action under § 1983, a plaintiff must show that she was deprived of a federal right by a "person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  Private parties like Hancock Bank are typically not considered "state actors" for § 1983 purposes.[7] *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Indeed, Stovall, in recognizing this fatal flaw, concedes her § 1983 claims in her response to Hancock Bank's motion to dismiss. (Doc. # 11, ¶ IV.)  Accordingly, Count IV of Stovall's Complaint is due to be DISMISSED to the extent it asserts a claim for race discrimination under § 1983, and Counts V and VIII are due to be DISMISSED in their entirety.

2.   **State Law Claims**

Stovall's Complaint also asserts claims against Hancock Bank under Alabama state law for intentional infliction of emotional distress and respondeat superior.  Both of these claims are due to be dismissed.  The tort of outrage is recognized in Alabama only in very limited circumstances, which are: (1) wrongful conduct in the family-burial context; (2)

---

[7] Only in rare circumstances can private parties be viewed as "state actors" for § 1983 purposes, and none of the required conditions were alleged to have been met in Stovall's Complaint. *See Chen ex rel. V.D. v. Lester*, 364 Fed. App'x 531 (11th Cir. 2010) (recognizing the three conditions that must be met for a private party to qualify as a "state actor" for § 1983 purposes as: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution; (2) the private party performed a public function that was traditionally the exclusive prerogative of the State; or (3) the State had so far insinuated itself into a position of interdependence with the private party that it was a joint partnership in the enterprise).

12

barbaric methods used to coerce an insurance settlement; and (3) egregious sexual harassment or abuse. *See Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). A defendant's conduct must also be "extreme and outrageous" such that it caused emotional distress "so severe that no reasonable person could be expected to endure it." *Id.* Stovall has not plead facts sufficient to establish a plausible claim for intentional infliction of emotional distress, and therefore, Count VI of the Complaint is due to be DISMISSED in its entirety.

As to Stovall's respondeat superior claim, the law is well-settled that a defendant cannot be held vicariously liable for a tort when the plaintiff cannot establish underlying liability for that tort. *See Knowles v. Am. Home Mortg. Serv. Inc.*, No. 5:11-cv-1670-AKK, 2013 WL 122543, at *3 (N.D. Ala. Jan. 7, 2013) (noting that vicarious liability cannot be established without underlying wrongful conduct). Because Stovall's respondeat superior claim is premised solely on her outrage claim, a claim which the Court has already determined she failed to plausibly plead, her claim for respondeat superior in Count VII of the Complaint is likewise due to be DISMISSED.

3.   **Title VII Discrimination and Retaliation Claims**

Stovall's Complaint is not a model of clarity. That being said, from what the Court can discern, it appears that Stovall's Complaint asserts three claims under Title VII: (1) a race discrimination claim (Count IV); (2) a claim for "exercise of rights protected by law," which is essentially a claim for retaliation (Count IX); and (3) another retaliation claim (Count X). Because Counts IX and X are essentially duplicative retaliation claims, as they are based on the same set of facts, Count X is due to be DISMISSED. To the extent Count

IX is premised on Title VII, the Court will address its merits below along with Stovall's remaining Title VII claims.

In the Title VII context, timely exhaustion of administrative remedies is a condition precedent to asserting a judicial claim. *Jordan v. City of Montgomery*, 283 Fed. App'x 766, 767 (11th Cir. 2008). Specifically, a charge under Title VII "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000(e)-5(e)(1). A plaintiff's "[f]ailure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge." *Id.*

In this case, Stovall filed her charge of discrimination with the EEOC on March 27, 2012, alleging claims of race discrimination and retaliation based on her July 12, 2011 discipline, the October 14, 2011 job threat, and Hancock Bank's failure to discipline Elwell for having an outburst on the floor on October 14, 2011, that was similar to the outburst Stovall allegedly had on July 12, 2011, and was disciplined for. (Doc. #1-1.) Stovall identifies the dates of discrimination in her charge as July 12, 2011, through October 14, 2011, and did not check the box for "continuing action." (Doc. #1-1.) As a result, Hancock Bank argues that any discriminatory action taken against Stovall more than 180 days before she filed her charge with the EEOC (*i.e.*, on or before September 29, 2011)[8] is not part of a timely charge of discrimination and, therefore, cannot form the basis of a viable Title VII claim. In response, Stovall argues that any untimely discriminatory acts that occurred before

---

[8] Although Hancock Bank's motion to dismiss represents that 180-days before March 27, 2012, the date Stovall filed her charge of discrimination, is September 23, 2011, the Court's calculations lead it to conclude that 180-days before March 27, 2012, is actually September 29, 2011.

September 29, 2011, are linked to a timely discriminatory act and, as such, can be considered under the continuing violation theory.

The Court does not accept Stovall's argument that the continuing violation theory salvages her ability to base her Title VII discrimination and retaliation claims on discriminatory acts that occurred more than 180-days before she filed her March 27, 2012 charge of discrimination (*i.e.*, on or before September 29, 2011). Neither Stovall's Complaint nor her charge contain allegations of a continuing violation. Indeed, Stovall left the "continuing action" box unchecked. (Doc. #1-1.) While this is not dispositive in and of itself, the fact that Stovall's July 12, 2011 discipline was a discrete act, rather than part of a continuing violation of discriminatory conduct, is. Continuing violations usually involve a policy or practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008) (holding that hiring decisions, light work assignments, and alleged retaliation constituted discrete acts and did not form part of a hostile work environment); *Tarmas v. Secretary of the Navy*, 433 Fed. App'x 754, 760 (11th Cir. 2011) (treating a transfer denial as a discrete act of discrimination). Here, Stovall's charge of discrimination encompasses three acts: her discipline on July 12, 2011, the job threat on October 14, 2011, and Hancock Bank's failure to discipline Elwell for having an outburst on the floor on October 14, 2011, that was similar to the outburst Stovall had on July 12, 2011 and was disciplined for. There are no allegations in either the charge or the Complaint that Hancock

Bank maintained a policy or had an established procedure that had a discriminatory effect on Stovall.[9] (Doc. #1.) Thus, to the extent Stovall's Title VII claims are based on purported discriminatory acts that occurred more than 180-days before she filed her March 27, 2012 charge (*i.e.*, on or before September 29, 2011), which would include her July 12, 2011 discipline, those claims are due to be DISMISSED.

However, even to the extent that Stovall's Title VII discrimination and retaliation claims are based on a timely act of discrimination, those claims still fail as a matter of law. The only timely acts of discrimination included in Stovall's charge are the October 14, 2011 job threat and Hancock Bank's failure to discipline Elwell for having an outburst on the floor on October 14, 2011, that was similar to the outburst Stovall allegedly had on July 12, 2011 and was not disciplined for. Thus, all the additional discriminatory acts alleged in Stovall's Complaint, including her being accused of violating Hancock Bank's cell phone policy, the discipline and write-ups she received in November 2011, her poor performance evaluation in February 2012, her failure to receive the Documentation Analyst Sr. and Lending Customer Service Specialist positions in September 2012, and her complaints in December 2011, February 2012, and August 2012, cannot form the basis of her Title VII race discrimination and retaliation claims because none of these allegations (regardless of their

---

[9] It appears that, based on Stovall's arguments in opposition to Hancock Bank's partial motion to dismiss, she has confused the motion to dismiss and summary judgment standards. Indeed, Stovall argues that "Defendant has not provided this Court with any evidence that the acts it cited was [sic] not discriminatory in nature." (Doc. #11.) Yet, at the motion to dismiss stage, Hancock Bank is not required to produce evidence refuting Stovall's claims. Indeed, if it had done so, the Court would have been required to convert Hancock Bank's partial motion to dismiss into one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

16

Case 2:12-cv-01036-WKW-WC   Document 13   Filed 07/03/13   Page 17 of 19

timeliness) were included in her charge of discrimination. Rather, they are new acts of discrimination that Stovall failed to administratively exhaust before the EEOC, and therefore, they cannot be litigated in this case. *See Jordan*, 283 Fed. App'x at 767 (explaining that timely exhaustion of administrative remedies is a condition precedent to maintaining a judicial action under Title VII).

Finally, when viewing Stovall's Title VII race discrimination and retaliation claims within the factual confines of her charge (*i.e.*, the October 14, 2011 job threat and Hancock Bank's failure to discipline Elwell for having an outburst similar to Stovall's), the Court is convinced that these claims cannot move forward because Stovall has failed to sufficiently plead a prima facie case. To establish a claim for race discrimination or retaliation under Title VII, the plaintiff must show that she was subjected to an adverse employment action. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002). A job threat and Hancock Bank's purported failure to discipline another employee for actions similar to those Stovall was disciplined for do not constitute adverse employment actions sufficient to establish her prima facie case, as they are not serious and material changes in the terms, conditions, or privileges of Stovall's employment. *See Miller-Goodwin v. City of Panama City, Fla.*, 385 Fed. App'x 966 (11th Cir. 2010) (not adverse employment action when plaintiff's supervisor accused her of making a scene or when she received two counselings). Accordingly, Count IV of Stovall's Complaint is due to be DISMISSED to the extent it asserts a race discrimination claim under Title VII, and Count IX of Stovall's Complaint, which is a retaliation claim premised on Title VII alone, is due to be DISMISSED in its entirety.

17

**4.      Section 1981 Claim and Rule 12(e) Motion for More Definite Statement**

The only remaining claim left at this juncture is Stovall's § 1981 race discrimination claim. Hancock Bank argues that the "majority of [Stovall's] claims brought under 42 U.S.C. § 1981 are due to be dismissed because she has failed to alleged an adverse employment action." At this time, and with this Complaint, the Court cannot agree. It is impossible for the Court to discern which specific facts support Stovall's § 1981 race discrimination claim from the face of the Complaint. Therefore, Hancock Bank's motion to dismiss as to Stovall's § 1981 race discrimination claim as alleged in Count IV of the Complaint is due to be DENIED.

However, Hancock Bank's Motion for a More Definite Statement, and Stovall's Motion to Replead, are due to be GRANTED as to the § 1981 race discrimination claim as plead in Count IV of the Complaint. This is the only claim that Stovall is given leave to amend, as amendment of her Title VII, § 1983, and state law claims, which the Court has dismissed, would be futile because these claims fail as a matter of law. No set of facts different from those Stovall has already alleged would make her untimely claims timely, would exhaust her unexhausted administrative remedies, or would show an adverse employment action where one otherwise does not exist.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant Hancock Bank's Partial Motion to Dismiss and Motion for a More Definite Statement (Doc. #7) is GRANTED IN PART and DENIED IN PART as follows:

(1) Hancock Bank's Partial Motion to Dismiss (Doc. #7) is GRANTED as to Counts V, VI, VII, VIII, IX, and X of Stovall's Complaint, and those claims are hereby DISMISSED in their entirety;

(2) Hancock Bank's Partial Motion to Dismiss (Doc. #7) is GRANTED as to Count IV of Stovall's Complaint to the extent it asserts race discrimination claims under § 1983 and Title VII, and those specific claims are hereby DISMISSED;

(3) Hancock Bank's Partial Motion to Dismiss (Doc. #7) is DENIED as to the § 1981 race discrimination claim alleged in Count IV of Stovall's Complaint;

(4) Hancock Bank's Motion for a More Definite Statement (Doc. #7) and Stovall's Motion to Replead (Doc. #11) are GRANTED as to the § 1981 race discrimination claim alleged in Count IV of Stovall's Complaint, and Stovall is given leave to amend her Complaint on or before July 24, 2013 to set forth the specific facts on which her § 1981 race discrimination is based.

DONE this the 3rd day of July, 2013.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE